**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-1787

MALEEKA JIHAD

      Plaintiff,

v.

COLORADO OFFICE OF REPONDENT PARENTS' COUNSEL,
MELISSA MICHAELIS THOMPSON, in her official and individual capacities,
ASHLEE ARCILLA, in her official and individual capacities,

      Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff Maleeka Jihad, by and through her counsel, Mari Newman, Andy McNulty, and
Madeline Leibin of NEWMAN | MCNULTY, LLC, respectfully alleges for her Complaint and Jury
Demand as follows:

**INTRODUCTION**

1.     In the summer of 2022, Maleeka Jihad was recruited to full-time employment at
the Colorado Office of Respondent Parents' Counsel ("ORPC"), after serving the ORPC for
approximately three years as a high performing part-time contractor. Ms. Jihad was recruited on
the basis of her deep professional expertise in anti-racism and her identity as a Black and Native
American woman. Through her hire, the ORPC pledged to do better than it had in the past with
respect to its treatment of people of color, including both the client base it serves, who are
largely families of color, as well as its own workplace culture.

2.     From the beginning and across her tenure at the ORPC, Ms. Jihad witnessed daily
acts of racism, customarily inflicted upon the ORPC's clients and employees. She did not sit by

idly, but instead spoke out time and time again. Because she was a Black woman speaking out about racism, the ORPC labeled her an "angry Black woman," and treated her worse than her white counterparts on that basis.

3.      In the fall of 2023, Ms. Jihad met with Melissa Michaelis Thompson, ORPC Executive Director, and Ashlee Arcilla, ORPC Deputy Director, among others, and detailed the racism she experienced at the ORPC. She told Defendant Arcilla that she wanted to return to being a part-time ORPC contractor because she was experiencing harm to her well-being by being consistently subjected to racism at the ORPC.

4.       Instead of taking Ms. Jihad's complaints seriously and working to resolve the racism at the ORPC, the ORPC retaliated against Ms. Jihad because of her identity and her opposition to the racism she witnessed and experienced. In negotiating her transition back to part-time contractor work, Defendants Thompson and Arcilla sought to pay Ms. Jihad less than a white employee doing the similar work. When Ms. Jihad refused those terms as unacceptable, they terminated her. To date, the ORPC has continued to retaliate against Ms. Jihad by blacklisting her from working with the ORPC and other ORPC contractors.

5.      Ms. Jihad brings this action against the ORPC, Ms. Thompson, and Ms. Arcilla, for their discriminatory and retaliatory actions, which violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), the Equal Protection Clause of the First and Fourteenth Amendments to the United States Constitution, the Colorado Anti-Discrimination Act ("CADA"), and the Colorado Public Health Emergency Whistleblower Act ("PHEW").

## JURISDICTION AND VENUE

6.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

7. Supplemental jurisdiction is based on 28 U.S.C. § 1367, because the violations of federal law alleged are substantial and the pendent causes of action derive from a common nucleus of operative facts.

8. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in the District of Colorado.

## ADMINISTRATIVE PREREQUISITES

9. Ms. Jihad timely filed her Charges of Discrimination against the ORPC, Ms. Thompson, and Ms. Arcilla with the Equal Employment Opportunity Commission ("EEOC") and Colorado Civil Rights Division ("CCRD"). She obtained from the EEOC and CCRD notices of her right to sue. Thus, all administrative prerequisites have been met.

## PARTIES

10. Plaintiff Maleeka Jihad is a resident of, and domiciled in, the State of Colorado. Ms. Jihad is a Black and Native American woman and thus a member of the classes of persons protected by Title VII, Section 1981, the Fourteenth Amendment, and the CADA at all times relevant to this Complaint.

11. Defendant ORPC is a state agency, established to oversee respondent parents' counsel, in order to improve the quality of legal representation for parents involved in dependency and neglect proceedings. *See* C.R.S. § 13-92-101, *et seq.* Defendant ORPC has continuously been an "employer" within the meaning of Title VII, the CADA, and the PHEW at all times relevant to this Complaint.

12. Defendant Melissa Michaelis Thompson was a citizen of the United States and resident of and domiciled in the State of Colorado. Defendant Thompson was acting within the

3

scope of her official duties and employment as the Executive Director of the ORPC at all times

relevant to this Complaint.

13.     Defendant Ashlee Arcilla was a citizen of the United States and resident of and

domiciled in the State of Colorado. Defendant Arcilla was acting within the scope of her official

duties and employment as the Deputy Director of the ORPC at all times relevant to this

Complaint.

## FACTUAL ALLEGATIONS

### The ORPC recruited Ms. Jihad based on her expertise in anti-racism work.

14.     Ms. Jihad was recruited by the ORPC to be a part-time contractor in the summer

of 2019. Due to her extensive experience in anti-racism work, she was hired as a contractor on

the same level as a licensed clinical social worker despite the fact that she was not a licensed

clinical social worker.

15.     Shortly after Ms. Jihad was hired as a part-time contractor, the ORPC asked her to

take the lead on a pilot program. The pilot program involved her taking over approximately fifty

cases. In short order, the ORPC also elevated her to program developer, trainer, and supervisor

positions for its Parent Advocate Program. Ms. Jihad also served as an expert consultant in anti-

racism, and as an anti-racist case strategist.

16.     Ms. Jihad was never disciplined during her part-time contractor employment with

the ORPC. To the contrary, the ORPC consistently acknowledged her excellence. In 2019, the

ORPC named Ms. Jihad "Social Worker/Family Advocate of the Year" due to her outstanding

work.

17.     While working as a part-time contractor for the ORPC, Ms. Jihad also worked as

the Chief Executive Officer of a consulting firm. In both her contractor role at the ORPC and

role as CEO of MJ Consulting, she was recognized as a national expert on anti-racism and hired to testify in courts across Colorado and the country about anti-racism. She also served as the Director of the non-profit MJCF Coalition, a grassroots anti-racist organization that serves people directly impacted by the Child Welfare and Child Protective Services system nationwide. Ms. Jihad was also an adjunct professor at the University of Denver's Graduate School of Social Work.

18.    In July of 2022, the ORPC began recruiting Ms. Jihad to become a full-time employee. Ms. Jihad initially resisted the ORPC's invitations because becoming full-time would mean that she would take a significant pay cut from her hourly-paid expert work.

19.    Ms. Jihad also had trepidation because she heard from former ORPC employees that leaders of the ORPC regularly acted discriminatorily toward employees and clients of color. She voiced her concerns to Defendant Thompson, and in response Defendant Thompson specifically told her that the ORPC wanted her on board full-time because it wanted to be an anti-racist workplace and to do better, both with respect to the clients it serves (who are largely families of color) and to its workplace culture. ORPC, and Defendant Thompson in particular, recruited Ms. Jihad with a specific promise to actively work to shed its history of racism.

20.    After more pressing from the ORPC, in August of 2022, Ms. Jihad accepted a position to begin full-time at the ORPC in October of 2022. Ms. Jihad took the position based on ORPC's promise that it would not discriminate against her during her employment.

**The ORPC recognized Ms. Jihad's excellent work as a full-time employee.**

21.    From the start of her full-time employment, Ms. Jihad excelled at the ORPC. Her work included giving advice on anti-racism in individual case consultations to attorney and non-attorney contractors, as well as ORPC staff; researching and testifying in support of ORPC

legislative initiatives; developing manuals and materials; supervising and observing ORPC contractors in court; connecting attorneys with non-attorney contractors such as social workers, family advocates, and parent advocates; hiring and preparing experts for court; settling client complaints; and engaging the community and media around the ORPC's mission.

22.    Ms. Jihad earned numerous other accomplishments in this period, she: became a nationally certified Forensic Social Worker, was nominated as an Aspen Ideas Fellow, and completed two publications. Ms. Jihad was the invited keynote speaker during the American Bar Association's Multidisciplinary Conference and the ORPC Conference in September 2023. Defendant Thompson ended the conference with a presentation describing Ms. Jihad's ongoing work. The presentation included several photos of Ms. Jihad in action. Ms. Jihad's ORPC supervisors frequently tasked her with public-facing roles and responsibilities. Ms. Jihad would later understand that she was being tokenized by the ORPC: she was trotted out as the face of the ORPC to make it look like the ORPC was diverse and anti-racist when the opposite was true.

23.    In February of 2023, in her six-month employee review, Ms. Jihad received only positive feedback from Director of Programs Jill Cohen, her direct supervisor, and Defendant Arcilla. Ms. Cohen called Ms. Jihad "an awesome ORPC colleague."

24.    In July of 2023, the ORPC gave Ms. Jihad a five percent raise in recognition of her excellence — this was an additional raise on top of a raise given to all ORPC employees.

**The ORPC discriminated against Ms. Jihad because of her race and sex.**

25.    Unfortunately, from the beginning of her full-time employment at the ORPC, Ms. Jihad experienced racism at the ORPC. She witnessed that racism was rampant at the ORPC. Ms. Jihad ultimately came to be the victim of multiple acts of racism by ORPC management.

26.     Ms. Jihad protested racism in the ORPC workplace when she witnessed it. Because she is a Black woman who spoke out against racism, she was labeled an "angry Black woman" by the ORPC's leadership. Specifically, ORPC Engagement Director Shawna Geiger described Ms. Jihad using this phrase to multiple ORPC employees, and complained that Ms. Jihad was always pulling "the race card." Ms. Geiger's statements undermined Ms. Jihad's professional reputation and ability to effectively do her work, both at and beyond the ORPC. Ms. Geiger's statements were not isolated remarks, but emblematic of how the ORPC viewed Ms. Jihad, and the reason it later terminated her employment

27.     No supervisor or individual with decision-making authority at the ORPC disciplined Ms. Geiger for making those statements. Upon information and belief, Defendant Thompson and Defendant Arcilla were aware that Ms. Geiger had called Ms. Jihad an "angry Black woman[.]" By refusing to take any corrective or other actions, the ORPC, Defendant Thompson, and Defendant Arcilla ratified the racist behavior of Ms. Geiger.

28.     During the summer of 2023, the ORPC had an employee day at Top Golf. During the event, Defendant Thompson stated, in front of Ms. Jihad and others, that her Type II Diabetes diagnosis was equivalent, in terms of persecution and hardship, to being a Black person in America. Many ORPC employees were present during Defendant Thompson's statement. This false equivalency demonstrated that Defendant Thompson lacked a fundamental understanding of the systemic discrimination experienced by the majority of the ORPC's client base and the very few people of color on the ORPC staff. It minimized the profound impacts of racism in America.

29.     Defendant Thompson, as Executive Director of the ORPC, is the final policymaker for the ORPC. To that end, her false equivalency and other statements constituted and reinforced the culture of racism at the ORPC and are attributable to the ORPC.

30.     Later, in the fall of 2023, during an anti-racism session hosted by Byron Conway, then ORPC Director of Diversity, Equity, Inclusion and Belonging — and the only other Black person at the ORPC that worked with contractors — Defendant Thompson again made racist comments. During the session, Mr. Conway shared with ORPC staff a story about being attacked on his college campus because he is a Black and Gay man, resulting in severe physical injuries that placed him into the Intensive Care Unit. After Mr. Conway shared his harrowing experience, Defendant Thompson stated that she understood the fear that Mr. Conway experienced. Defendant Thompson went on to equate her fear of dining in restaurants as a Type II Diabetic to the fear that Mr. Conway must have felt during and after the attack. This false equivalency was not just insulting and demeaning to Mr. Conway (and Ms. Jihad as the only other Black staff member present), it again made clear that Defendant Thompson had no understanding of systemic discrimination. Defendant Thompson's statement undermined Mr. Conway's racial and sexual identities, as well as his work in furtherance of Diversity, Equity, Inclusion and Belonging at the ORPC. Defendant Thompson's statement was emblematic of the racist culture at the ORPC. And, as stated, given her authority as Executive Director, represented the position of the ORPC.

31.     As another example of the ORPC's racist culture, Ms. Geiger — the ORPC Engagement Director who had called Ms. Jihad an "angry Black woman" — openly and often spoke in the office about her fetish for Black men, objectifying them based on their race.

32.    Upon information and belief, neither Defendant Thompson nor Defendant Arcilla, or any other employees, ever disciplined or confronted Ms. Geiger for her comments objectifying Black men. To that end, the ORPC leadership ratified and approved these comments.

33.    On September 1, 2023, Ms. Jihad voiced her concerns regarding the ORPC's racist treatment of clients and employees, including herself. She met with the entire ORPC staff via Microsoft Teams, and shared how disappointed she was in the ongoing racism that she witnessed and experienced at the ORPC. Additionally, she vocalized that she did not feel supported and that it was extremely difficult to work in an office where they viewed her Black community as less than deserving. No follow up actions were initiated by the ORPC leadership, including by Defendants Thompson or Arcilla.

34.    Three working days later, on September 6, 2023, Ms. Jihad followed up with Defendant Thompson individually. On a Microsoft Teams call, she told Defendant Thompson that, in her experience, the ORPC did not know how to talk to, support, or protect a Black woman employee. Defendant Thompson acknowledged the racism that Ms. Jihad had endured during this call. During the call , Ms. Jihad told Defendant Thompson that she was observing court as part of her duties at the ORPC and taking notes about the racism that she saw in those settings from various ORPC contract attorneys. Despite Ms. Jihad raising these concerning allegations, Defendant Thompson did not, or cause others to, take any corrective or other actions. Defendant Thompson, as Executive Director of the ORPC, was outside of Ms. Jihad's chain of command. Raising complaints about workplace racism, and racism by ORPC contractors, was not encompassed within Ms. Jihad's specific job duties.

35.     In October of 2023, Sarah Morris (an attorney with the ORPC), Mr. Conway, and
Ms. Jihad had an unexpected virtual meeting with Ms. Cohen and Defendant Arcilla. During the
meeting, Ms. Jihad again discussed the racist environment at the ORPC, and this time further
shared negative impacts that the racist environment — which remained unaddressed despite her
earlier communications to the entire staff — was having on her mental health and physical well-
being. She explicitly told Ms. Cohen and Defendant Arcilla that she did feel safe as a Black
woman working at the ORPC. After this meeting, there was no follow-up to address the concerns
that Ms. Jihad raised or to alleviate the negative impacts she experienced.

36.     On October 3, 2023, Ms. Jihad called Ms. Cohen, who was her direct supervisor
at the ORPC, and shared the negative impacts she was experiencing, connecting them to the
racist environment at the ORPC. She specifically recounted Ms. Geiger's statements calling her
an "angry Black woman" and the emotional distress and diminishment of her career that had
caused, especially without any corrective or other actions by leadership at the ORPC. She told
Ms. Cohen that the ORPC had a duty to make the ORPC a safe environment for non-white
employees but was failing that duty.

**The ORPC's racist culture caused Ms. Jihad to seek to return to contract work.**

37.     On November 8, 2023, following approximately a month without any efforts by
the ORPC leadership to address the rampantly racist culture of the workplace, Ms. Jihad again
called Ms. Cohen. Ms. Jihad talked with her extensively about her concerns that the ORPC
allows racist attorneys to work with vulnerable families. Further, she told Ms. Cohen that she
needed to return to part-time contract work with the ORPC, because of the distress she was
experiencing from the racist environment at the ORPC. Upon information and belief, the ORPC

had granted this accommodation in the past to white employees by allowing them to become contractors.

38.     On November 13, 2023, Ms. Jihad met with Defendant Arcilla for two hours. Over those two hours, she again spoke extensively about the racist environment at the ORPC. She told Defendant Arcilla that the ORPC was an unsafe, abusive place to work for people of color. She highlighted how no one had held Defendant Thompson accountable for the racist environment she created and perpetuated. She told Defendant Arcilla that she wanted to return to part-time contract work because of the racist environment at the ORPC, and the immense distress it was causing her. Defendant Arcilla cried, and acknowledged the racism that Ms. Jihad had endured. She told Ms. Jihad that she would be allowed to go back to being a part-time contractor and that the ORPC should pay her a severance. She elaborated that three months of severance pay was the standard amount offered to employees who had departed in the past (who, upon information and belief, were white). Defendant Arcilla ended the meeting by instructing Ms. Jihad to email her with her desired contract work arrangement; she also committed to put together a meeting with Defendant Thompson to discuss Ms. Jihad's concerns. Defendant Arcilla was outside of Ms. Jihad's chain of command.

**The ORPC offered to pay Ms. Jihad less than a white woman for contact work.**

39.     On November 15, 2023, Ms. Jihad emailed Defendant Arcilla detailing her desired contractor duties. She asked to be paid $125 per hour for those duties because she believed that the ORPC would never pay a Black woman as much as a white woman, and she knew a white woman who was doing similar work as a contractor for the ORPC and was being paid $175 per hour. Ms. Jihad sought a six-month contract, at twenty hours per week.

40.     On November 30, 2023, Ms. Jihad met with Defendants Arcilla and Thompson, and the three discussed Ms. Jihad's separation from the ORPC. Defendants Arcilla and Thompson allowed Ms. Jihad to return to contract work, but, astoundingly, offered Ms. Jihad only $115 per hour, for only three months and twenty (not forty) hours per week. Defendants Arcilla and Thompson did not offer Ms. Jihad a severance package, despite Defendant Arcilla's previous representations that other white employees had been offered severance.

41.     Ms. Jihad was offered less money than her white counterparts because she is a Black woman and, particularly, because she is a Black woman who spoke out against the racism within the ORPC.

42.     In face of such starkly unequal terms, Ms. Jihad declined the offer.

**The ORPC terminated Ms. Jihad because she is a Black woman who spoke out about the racism inflicted upon the ORPC's clients and employees, including herself.**

43.     On December 4, 2023, Ms. Jihad was called into a "emergency" Zoom meeting by Defendants Thompson and Arcilla. The meeting lasted approximately fifteen minutes. Defendants Thompson and Arcilla told Ms. Jihad that she either was to either take a severance package which contained a general release of claims and non-disclosure provision, or she would be terminated from the ORPC effective immediately. Ms. Jihad refused to sign the release and was terminated.

44.     Ms. Jihad was not given any reason for her termination. Nor could the ORPC give any: Ms. Jihad's performance was stellar, despite the racist environment at the ORPC that she was made to endure.

45.     The ORPC summarily terminated Ms. Jihad because she is a Black woman and, particularly, a Black woman who spoke out against the racism within the ORPC (both toward its clients and it employees).

46.     The ORPC discriminated against Ms. Jihad because she is a Black, Native American woman.

47.     During her full-time employment, Ms. Jihad was the only Black woman at the ORPC. Since her termination, Mr. Conway, the only other person of color who was outspoken on issues of race and equity, has left the ORPC.

48.     Ms. Jihad's job was not eliminated when she was terminated. Ms. Jihad was replaced by two separate employees (demonstrating she was doing the job of two people while working at the ORPC), both of whom are white.

49.     As a result of the ORPC's conduct, Ms. Jihad has suffered significant damages. First, the racist environment at the ORPC caused her significant emotional and physical distress. Second, and in addition to the plain economic damages caused by the ORPC terminating her employment, Ms. Jihad has faced devastating economic consequences. Not only did the ORPC terminate her, but it also blacklisted her from working with the ORPC itself and with any ORPC state contractors — approximately 250 attorneys, social workers, family advocates and parent advocates who were the primary sources of her previous contract work. The ORPC, Defendant Thompson, and Defendant Arcilla blacklisted Ms. Jihad to retaliate against her for speaking out about the ORPC's racist workplace and actions toward the families it was supposed to be serving.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 2000e, *et seq.* — Title VII

**Discrimination Based on Sex, Race, and/or Sex-Plus-Race**
*Against Defendant ORPC*

50.     Plaintiff incorporates all other paragraphs of this Complaint as if set forth herein.

51.     As a Black and Native American woman, Plaintiff is a member of protected classes under Title VII.

52.     At all relevant times, Plaintiff performed the functions of her job satisfactorily and was qualified for her position.

53.     Defendant ORPC subjected Plaintiff to adverse treatment in the terms and conditions of her employment because of her race, sex, and/or sex-plus-race.

54.     Defendant ORPC treated Plaintiff less favorably than her similarly situated white and/or male counterparts by terminating her employment, offering her less compensation for similar part-time contractor responsibilities, and treating her worse because of her race, sex, and/or sex-plus-race where such actions were not taken against similarly situated white and/or male ORPC employees.

55.     Additionally, Defendant ORPC created abusive working conditions for Plaintiff due to harassment based on her race, sex, and/or sex-plus-race where such conditions were not present for similarly situated white and/or male ORPC employees.

56.     The harassment based on sex and/or race to which Defendant ORPC subjected Plaintiff was pervasive and/or severe enough to alter the terms, conditions, or privileges of her employment and create a hostile or abusive work environment.

57.     Defendant ORPC intended to discriminate against Plaintiff because of her race, sex, and/or sex-plus-race in taking adverse employment actions against her.

58.     Defendant ORPC permitted, tolerated, and ratified remarks made by Plaintiff's colleagues and supervisors that reflected a discriminatory animus.

59.    Plaintiff's race, sex, and/or sex-plus-race were motivating factors in Defendant ORPC taking adverse employment actions against Plaintiff, and Defendant ORPC took such actions because of Plaintiffs' race, sex, and/or sex-plus-race.

60.    Defendant ORPC's asserted reasons for taking adverse employment actions against Plaintiff are mere pretext for illegal discrimination and did not actually motivate those actions.

61.    Defendant ORPC is liable for the acts and/or omissions of its agents and employees, including Defendants Thompson and Arcilla. Defendant ORPC, either directly or by and through its agents, discriminated against Plaintiff on the basis of her race, sex, and/or sex-plus-race, and directly and proximately caused her injuries, damages, and losses.

62.    Defendant ORPC, either directly or by and through its agents, unlawfully discriminated against Plaintiff, which directly and proximately caused her damages.

63.    Plaintiff continues to be damaged by Defendant ORPC's violation of her rights under Title VII.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 2000e, *et seq.* — Title VII**
**Retaliation**
*Against Defendant ORPC*

64.    Plaintiff incorporates all other paragraphs of this Complaint as if set forth herein.

65.    At all relevant times, Plaintiff was qualified to perform her job responsibilities and satisfactorily performed the duties of her positions.

66.    Plaintiff believed in good faith that Defendant ORPC discriminated against her on the basis of her race, sex, and/or sex-plus-race.

67.    Plaintiff opposed activities prohibited by Title VII by, among other things, objecting to, and reporting, discrimination and retaliation against herself and other ORPC employees and clients.

68.    As a direct result of Plaintiff's protected opposition to activities prohibited by Title VII, Defendant ORPC subjected her to actions which a reasonable employee would have found materially adverse, including but not limited to terminating her employment, offering her less compensation for similar part-time contractor responsibilities, and treating her worse because of her race, sex, and/or sex-plus-race where such actions were not taken against similarly situated white and/or male ORPC employees, among other materially adverse actions.

69.    Defendant ORPC's retaliation against Plaintiff arose out of, was caused by, and was like and related to the discrimination she opposed.

70.    Defendant treated Plaintiff more adversely than her similarly situated counterparts who did not voice their opposition to Defendant ORPC's discrimination.

71.    Defendant ORPC's asserted reasons for taking adverse actions against Plaintiff were pretext for illegal retaliation and did not actually motivate those actions.

72.    Defendant ORPC is liable for the acts and omissions of its agents and employees.

73.    Defendant ORPC, either directly or by and through its agents, unlawfully retaliated against Plaintiff, which directly and proximately caused her damages.

74.     Plaintiff continues to be damaged by Defendant ORPC's violation of her rights under Title VII.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983 — Section 1981**
**Race Discrimination**
*Against Defendants Thompson and Arcilla*

75.    Plaintiff incorporates all other paragraphs of this Complaint as if set forth herein.

76.     Plaintiff is Black, and thus a member of a protected class under Section 1981.

77.     At all relevant times, Plaintiff performed the functions of her job satisfactorily and was qualified for her position.

78.     Plaintiff's employment relationship with the ORPC encompassed sufficient contractual rights to support a Section 1981 claim for race discrimination.

79.     Defendants denied Plaintiff the protections against race discrimination provided by Section 1981 in the terms and conditions of her employment by denying her the same benefits, privileges, and terms and conditions of her contractual employment relationship that her white counterparts enjoyed by, including but not limited to, by terminating her employment, offering her less compensation for similar part-time contractor responsibilities, and treating her worse because of her race, sex, and/or sex-plus-race where such actions were not taken against similarly situated white and/or male ORPC employees.

80.     Additionally, Defendants created abusive working conditions for Plaintiffs due to harassment based on her race where such conditions were not present for similarly situated white ORPC employees.

81.     The harassment based on race to which Defendants subjected Plaintiff was pervasive and/or severe enough to alter the terms, conditions, or privileges of her employment and create a hostile or abusive work environment.

82.     Plaintiff's race was a but-for cause of Defendants' adverse actions and harassment.

83.     Defendants' discriminatory treatment and harassment against Plaintiff directly and proximately caused her damages.

84.     Plaintiff continues to be damaged by Defendants' violations of her rights under

Section 1981.

**FOUTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983 — Section 1981**
**Retaliation**
*Against Defendants Thompson and Arcilla*

85.     Plaintiff incorporates all other paragraphs of this Complaint as if set forth herein.

86.     Plaintiff believed in good faith that Defendants discriminated against her on the

basis of her race.

87.     Plaintiff opposed activities prohibited by Section 1981 by, among other things,

objecting to and reporting discrimination and retaliation against herself and other ORPC

employees and clients.

88.     As a direct result of Plaintiff's protected opposition to activities prohibited by

Section 1981, Defendants subjected her to actions which a reasonable employee would have

found materially adverse, including but not limited to terminating her employment, offering her

less compensation for similar part-time contractor responsibilities, and treating her worse

because of her race, sex, and/or sex-plus-race where such actions were not taken against

similarly situated white and/or male ORPC employees, among other materially adverse actions.

89.     Defendants' retaliation against Plaintiff arose out of, was caused by, and was like

and related to the race discrimination she opposed.

90.     Defendants treated Plaintiff more adversely than her similarly situated

counterparts who did not voice their opposition to Defendant ORPC's discrimination against

clients and employees, including herself.

91.     Defendants' asserted reasons for taking adverse actions against Plaintiff were

pretext for illegal retaliation and did not actually motivate those actions.

92.     Defendants' retaliation against Plaintiff directly and proximately caused her damages.

93.      Plaintiff continues to be damaged by Defendants' violations of her rights under Section 1981.

**FIFTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983 — Fourteenth Amendment**
**Discrimination Based on Sex, Race, and/or Sex-Plus-Race**
*Against Defendants Thompson and Arcilla*

94.     Plaintiff incorporates all other paragraphs of this Complaint as if set forth herein.

95.     Plaintiff is a Black, Native American woman.

96.     Defendants were acting under color of state law in its actions and inactions at all relevant times.

97.     At the time of the complained of events, Plaintiff had the clearly established constitutional right to be free from racial discrimination and to enjoy the equal protection of the laws.

98.     Plaintiff's race, sex, and/or sex-plus-race were a motivating factor in Defendants' decisions to discriminate and retaliate. Defendants acted with the intent or purpose of depriving Plaintiff of the equal protection and benefits of the law, and equal privileges and immunities under the law, in violation of the Fourteenth Amendment

99.     Specifically, Defendants terminated Plaintiff's employment, sought to underpay her, and took other adverse employment actions against her because of her race, sex, and/or sex-plus-race. Such actions were not taken against similarly situated white and/or male ORPC employees.

100.    Additionally, Defendants created abusive working conditions for Plaintiff due to harassment based on her race, sex, and/or sex-plus-race where such conditions were not present for similarly situated white and/or male ORPC employees.

101.    The harassment based on race, sex, and/or sex-plus-race to which Defendants subjected Plaintiff was pervasive and/or severe enough to alter the terms, conditions, or privileges of her employment and create a hostile or abusive work environment.

102.    Defendants had no rational basis for their discriminatory and retaliatory actions, let alone a purpose narrowly tailored to serve a compelling governmental interest in discriminating and retaliating against Plaintiff on the basis of her race, sex, and/or sex-plus-race.

103.    Defendants engaged in these actions or inactions intentionally, willfully, maliciously, and wantonly, showing deliberate indifference to and reckless disregard of Plaintiff's federally protected constitutional rights.

104.    Defendants' actions were objectively unreasonable considering the facts and circumstances confronting them.

105.    Defendants' actions against Plaintiff directly and proximately caused her damages.

106.     Plaintiff continues to be damaged by Defendants' violations of her rights under the Fourteenth Amendment of the United States Constitution.

**SIXTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983 — First Amendment**
**Freedom Of Speech**
*Against Defendants Thompson and Arcilla*

107.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

108.    Defendants acted under color of state law and within the course and scope of their employment at all times relevant to the allegations in this Complaint.

109.    Defendants are "persons" under 42 U.S.C. § 1983.

110.    Plaintiff was engaged in First Amendment-protected expression on a matter of public concern by speaking out against the racism within the ORPC.

111.    Plaintiff's speech was not made pursuant to her official duties.

112.    Plaintiff's speech was not disruptive and Defendant ORPC's interests did not outweigh Plaintiff's free speech interests.

113.    Defendants would not have terminated Plaintiff if she had not engaged in First Amendment-protected conduct.

114.    Defendants' termination of Plaintiff was substantially motivated by her First Amendment protected activity.

115.    The actions of Defendants can be expected to chill a reasonable person from engaging in activity protected by the First Amendment.

116.    Defendants, collectively, failed to intervene to prevent each other Defendant from violating Plaintiff's constitutional rights.

117.    At the time when Defendants retaliated against Plaintiff for speaking out, Plaintiff had a clearly established constitutional right under the First Amendment to the United States Constitution to engage in the above-described activity.

118.    Defendants engaged in their conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

119.    Defendants' actions against Plaintiff directly and proximately caused her damages.

120.     Plaintiff continues to be damaged by Defendants' violations of her rights under the First Amendment of the United States Constitution.

## SEVENTH CLAIM FOR RELIEF
### C.R.S. § 24-34-301, *et seq.* — CADA
### Discrimination Based on Sex, Race, and/or Sex-Plus-Race
*Against All Defendants*

121.     Plaintiff incorporates all other paragraphs of this Complaint as if set forth herein.

122.     As a Black and Native American woman, Plaintiff is a member of multiple protected classes under the CADA.

123.     At all relevant times, Plaintiff performed the functions of her job satisfactorily and was qualified for her positions.

124.     Defendant ORPC subjected Plaintiff to adverse treatment in the terms and conditions of her employment because of her race, sex, and/or sex-plus-race.

125.     Defendant ORPC treated Plaintiff less favorably than her similarly situated white and/or male counterparts by terminating her employment, offering her less compensation for similar part-time contractor responsibilities, and treating her worse because of her race, sex, and/or sex-plus-race where such actions were not taken against similarly situated white and/or male ORPC employees.

126.     Additionally, Defendants created abusive working conditions for Plaintiff due to harassment based on her race, sex, and/or sex-plus-race where such conditions were not present for similarly situated white and/or male ORPC employees.

127.     The harassment based on sex and/or race to which Defendants subjected Plaintiff had the purpose or effect of unreasonably interfering with her work performance and creating an intimidating, hostile, and offensive working environment.

128.    Defendants intended to discriminate against Plaintiff because of her race, sex, and/or sex-plus-race in taking adverse employment actions against her.

129.    Defendants permitted, tolerated, and ratified remarks made by Plaintiff's colleagues and supervisors that reflected a discriminatory animus.

130.    Plaintiff's race, sex, and/or sex-plus-race were motivating factors in Defendants taking adverse employment actions against Plaintiffs, and Defendants took such actions because of Plaintiff's race, sex, and/or sex-plus-race.

131.    Defendants' asserted reasons for taking adverse employment actions against Plaintiff were mere pretext for illegal discrimination and did not actually motivate such actions.

132.    Defendants Thompson and Arcilla aided, abetted, incited, compelled, or coerced the doing of the discriminatory acts and unfair employment practices with respect to Plaintiff.

133.    Defendant ORPC is liable for the acts and/or omissions of its agents and employees. Defendant ORPC, either directly or by and through its agents, discriminated against Plaintiffs on the basis of their race, sex, and/or sex-plus-race, and directly and proximately caused their injuries, damages, and losses.

134.    Defendants' actions against Plaintiff directly and proximately caused her damages.

135.    Plaintiff continues to be damaged by Defendants' violations of her rights under the CADA.

**EIGHTH CLAIM FOR RELIEF**
**C.R.S. § 24-42-301,** *et seq.* **— CADA**
**Retaliation**
*Against All Defendants*

136.    Plaintiff incorporates all other paragraphs of this Complaint as if set forth herein.

137.    At all relevant times, Plaintiff performed the functions of her job satisfactorily and was qualified for her positions.

138.    Defendants discriminated against Plaintiff on the basis of her race, sex, and/or race-plus-sex, as described herein.

139.    Plaintiff engaged in protected activity by opposing that discrimination.

140.    As a direct result of Plaintiff's protected opposition to activities prohibited by CADA, Defendants subjected her to actions which a reasonable employee would have found materially adverse, including but not limited to terminating her employment, offering her less compensation for similar part-time contractor responsibilities, and treating her worse because of her race, sex, and/or sex-plus-race where such actions were not taken against similarly situated white and/or male ORPC employees, among other materially adverse actions.

141.    Defendants' retaliation against Plaintiff arose out of, was caused by, and was like and related to the discrimination she opposed.

142.    Defendant treated Plaintiff more adversely than her similarly situated counterparts who did not voice their opposition to Defendant ORPC's discrimination against clients and employees, including herself.

143.    Defendants' asserted reasons for taking adverse actions against Plaintiff were pretext for illegal retaliation and did not actually motivate those actions.

144.    Defendant ORPC is liable for the acts and omissions of its agents and employees.

145.    Defendants' actions against Plaintiff directly and proximately caused her damages.

146.    Plaintiff continues to be damaged by Defendants' violations of her rights under the CADA.

## NINTH CLAIM FOR RELIEF
### C.R.S. § 8-14.4-101, *et seq*. — PHEW
### Retaliation
*Against Defendant ORPC*

147.    Plaintiff incorporates all other paragraphs of this Complaint as if set forth herein.

148.    Plaintiff believed and raised, repeatedly, in good faith, that Defendants violated government health and safety rules — namely, that Defendants engaged in racism against the ORPC's clients and staff.

149.    On April 21, 2021, the Colorado Department of Public Health and Environment ("CDPHE") declared racism a public health crisis.

150.    As a direct result of Plaintiff's good faith raising of reasonable concern about workplace racism, Defendant ORPC subjected her to actions which a reasonable employee would have found materially adverse, including but not limited to terminating her employment, offering her less compensation for similar part-time contractor responsibilities, and treating her worse because of her race, sex, and/or sex-plus-race where such actions were not taken against people who did not raise reasonable concerns of racism in the workplace.

151.    Defendants' retaliation against was based on Plaintiff's opposition to workplace racism.

152.    Defendants treated Plaintiff more adversely than her similarly situated counterparts who did not voice their opposition to Defendant ORPC's discrimination against clients and employees.

153.    Defendants' asserted reasons for taking adverse actions against Plaintiff were pretext for illegal retaliation and did not actually motivate those actions.

154.    Defendant ORPC is liable for the acts and omissions of its agents and employees.

155.    Defendants' retaliation against Plaintiff directly and proximately caused her damages.

156.     Plaintiff continues to be damaged by Defendants' violations of her rights under the PHEW.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and award her all relief as allowed by law, including, but not limited to the following:

a.  Declaratory relief and injunctive relief, as appropriate;

b.  Actual economic damages as established at trial;

c.  Compensatory damages;

d.  Non-economic damages;

e.  Punitive damages in an amount to be determined at trial;

f.  Issuance of an Order mandating appropriate equitable relief, including but not limited to:

 i.  Issuance of a formal written apology;

 ii.  The imposition of mandatory training within the ORPC, designed to address future similar misconduct;

 iii.  Reversing the ban on Ms. Jihad acting as an independent contractor of the ORPC and other ORCP-related attorneys and contractors;

g.  Pre-judgment and post-judgment interest at the highest lawful rate;

h.  Attorney's fees and costs; and

i.  Such further relief as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated this 8th day of June 2025.

NEWMAN | MCNULTY

s/ Andy McNulty
Mari Newman
Andy McNulty
Madeline Leibin
1490 N. Lafayette Street Suite 304
Denver, CO 80218
(720) 850 - 5770
mari@newman-mcnulty.com
andy@newman-mcnulty.com
madeline@newman-mcnulty.com

ATTORNEYS FOR PLAINTIFF