IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-01787-CNS-TPO

MALEEKA JIHAD

      Plaintiff,

v.

COLORADO OFFICE OF REPONDENT PARENTS' COUNSEL,
MELISSA MICHAELIS THOMPSON, in her official and individual capacities,
ASHLEE ARCILLA, in her official and individual capacities,

      Defendants.

---

## DEFENDANTS' MOTION TO PARTIALLY DISMISS THE COMPLAINT

---

Defendants Office of the Respondent Parents' Counsel ("ORPC"), Melissa M. Thompson, and Ashlee Arcilla (together, "Defendants"), by and through counsel, hereby move to partially dismiss the Complaint, Doc. 1, as follows:

### CERTIFICATE OF COMPLIANCE

Pursuant to D.C.COLO.LCivR 7.1(a), and CNS Civil Practice Standard 7.1B(b), Defendants conferred with Plaintiff regarding this relief sought in this motion. The parties were able to narrow some issues and those remaining are addressed herein.

### BACKGROUND AND FACTUAL ALLEGATIONS

OPRC was established in 2016, as an independent office within the State's judicial department. Colo. Rev. Stat. § 13-92-103(1)(a). ORPC supports Colorado parents seeking to preserve their parental rights in dependency and neglect cases;

protects the due process and statutory rights of parents; and promotes the preservation of family relationships when appropriate. *Id.* § 13-92-101(1)(a). In October 2022, Plaintiff Maleeka Jihad ("Plaintiff") began work as an employee for ORPC. Compl., ¶ 20. Before her employment, she worked part time as an independent contractor for ORPC. *Id.,* ¶ 14. In late 2023, Plaintiff sought to return to her work as an independent contractor. *Id.*, ¶ 38. This case arises from Plaintiff's termination following unsuccessful negotiations surrounding Plaintiff's end-of-employment terms. Plaintiff brings federal claims against ORPC for discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and against Thompson and Arcilla pursuant to 42 U.S.C. § 1983, alleging violations of her rights under 42 U.S.C. § 1981 and the First and Fourteenth Amendments to the U.S. Constitution. She also asserts state law claims under the Colorado Anti-Discrimination Act ("CADA").

Plaintiff alleges throughout her employment she protested racism when she witnessed it. Compl., ¶¶ 25-26, 33. Plaintiff contends ORPC Engagement Director Shawna Geiger ("Geiger") described her as an "angry Black woman" to multiple ORPC employees and complained that Plaintiff was always pulling "the race card." *Id.* ¶ 26. Plaintiff also states Geiger spoke openly of her fetish for Black men. *Id.* ¶ 31. Plaintiff asserts Geiger was not disciplined for her statements. *Id.* ¶ 32. Plaintiff further alleges Thompson, in the summer and fall of 2023, made statements equating her Type II diabetes diagnosis to the experience of being Black. *Id.* ¶¶ 28-30. Plaintiff contends when she reported ORPC's racist environment there was no follow-up to address her concerns. *Id.* ¶¶ 33-35.

2

On November 8, 2023, Plaintiff alleges she informed her direct supervisor she "needed to return to part-time contract work with the ORPC" because of ORPC's racist environment. *Id.* ¶ 37. She asserts ORPC discriminated against her during negotiations of the terms of her return to contractor status because it offered Plaintiff a lower hourly rate compared to a white female contractor, and because it did not offer Plaintiff a severance package in addition to the contract work. *Id.* ¶¶ 39-40. Plaintiff alleges she was discriminated against and retaliated against when, on December 4, 2023, ORPC informed her she could either accept a three-month severance package containing a general release of claims and non-disclosure provision, or she would be terminated. *Id.* ¶ 43. Plaintiff declined the severance offer and was terminated. *Id.* Following her termination, Plaintiff contends she was replaced with two white employees and was prohibited from working with ORPC state contractors moving forward. *Id.* ¶¶ 48-49.

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants move to dismiss Plaintiff's claims brought under Title VII, the Fourteenth Amendment, and CADA to the extent they are based on sex or sex-plus-race discrimination. Defendants move to dismiss Plaintiff's CADA claims against Defendants Thompson and Arcilla for failure to state a claim.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) concerns whether the allegations in a complaint are sufficient to state a plausible and cognizable claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). While a court assumes that well-pleaded facts are true, legal conclusions are not entitled to the same assumption. *Rooker v. Ouray Cnty.*, 841 F. Supp. 2d 1212, 1215-16 (D. Colo. 2012), *aff'd,* 504 F. App'x 734 (10th Cir. 2012).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.; *see Moses-El v. City & Cnty. of Denver*, No. 17-CV-03018-MSK-NRN, 2020 WL 859240, at *2 (D. Colo. Feb. 21, 2020) ("The court is 'not bound to accept as true a legal conclusion couched as a factual allegation'") (internal quotations omitted).

The qualified immunity doctrine "shields government officials performing discretionary functions from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Toevs v. Reid*, 685 F.3d 903, 909 (10th Cir. 2012) (internal quotations and citations omitted). Once the issue of qualified immunity has been raised, the burden shifts to the plaintiff to show that (1) the specific actions of each individually named defendant violated a specific statutory or constitutional right, and (2) that right was "clearly established at the time of the conduct at issue." *Pearson v. Callahan,* 555 U.S. 223, 232-33 (2009).

## **ARGUMENT**

I. **Plaintiff has not alleged a plausible claim of discrimination or harassment on the basis of sex or sex-plus-race under Title VII.**

Plaintiff's First Claim for relief asserts claims of discrimination and harassment based on sex under Title VII. She has not plausibly alleged a claim under either theory.

### **A. Plaintiff's allegations do not give rise to an inference of unlawful discrimination.**

Title VII bars employers from intentionally discriminating against their employees on the basis of sex and race. 42 U.S.C. § 2000e–2(a)(1). Plaintiff alleges ORPC

discriminated against her on the basis of her sex and sex-plus-race when it terminated
her employment, offered her less compensation, and "treat[ed] her worse" because of
her sex. Compl., ¶ 54. The slim factual basis for Plaintiff's allegations is not enough "to
raise a right to relief above the speculative level..." *Bell Atl. Corp. v. Twombly*, 550 U.S.
544, 545 (2007); *see also Iqbal*, 556 U.S. at 678.

      "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie
case in her complaint, the elements of each alleged cause of action help to determine
whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d
1188, 1192 (10th Cir. 2012). The prima facie case required to support a claim of gender
discrimination is a flexible standard and "may well vary, depending on the context of the
claim and the nature of the adverse employment action alleged." *Plotke v. White*, 405
F.3d 1092, 1099 (10th Cir. 2005). Whatever test is applied, "[t]he critical prima facie
inquiry in all cases is whether the plaintiff has demonstrated that the adverse
employment action occurred 'under circumstances which give rise to an inference of
unlawful discrimination.'" *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227
(10th Cir. 2000) (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248,
253 (1981)).

      Here, Plaintiff's factual allegations do not raise an inference of unlawful
discrimination on the basis of sex. Instead, they relate largely to race discrimination.
Plaintiff contends while negotiating her exit, ORPC allegedly offered her a lower rate
than a white female "doing similar work as a contractor." *Id.* ¶ 39. Once she was
terminated, Plaintiff alleges she was replaced by two white individuals, but she does not

state either individual's gender. *Id.* ¶ 48. Plaintiff also contends a female colleague,

Geiger, referred to her as an "angry Black woman" and was not disciplined for her

statement, but she identifies this fact as evidence that Defendants Thompson and

Arcilla "ratified the *racist* behavior of Ms. Geiger." *Id.* ¶ 27 (emphasis added).[1] Plaintiff

further alleges Geiger objectified Black men "based on their race" when she "openly and

often spoke in the office about her fetish for Black men." *Id.* ¶ 31. When Plaintiff

allegedly reported to ORPC that she did not feel safe as "a Black woman," she ascribed

her fear to ORPC's "*racist* environment." *Id.* ¶¶ 35-36 (emphasis added). Plaintiff states

it was ORPC's "racist culture" that caused her to return to contract work. *Id.* at 10

(heading before ¶ 37). Despite allegedly raising concerns about racism within ORPC on

multiple occasions, *see id.* ¶¶ 33-37, Plaintiff did not report sexism at any time. *Id.*,

*passim*.

 Plaintiff hinges her sex discrimination claim "[u]pon information and belief" that

Thompson and Arcilla were aware that Ms. Geiger had called Ms. Jihad an "angry Black

woman." *Id.* ¶ 27. Plaintiff does not allege that she informed Thompson or Arcilla orally

or in writing that Geiger had referred to her as an "angry Black woman". Compl.,

*passim*. Without additional factual allegations, Plaintiff's assertion that Thompson and

Arcilla were aware that she had been referred to as an "angry Black woman," based

only upon "information and belief," is speculative and insufficient to state a plausible

---

[1] Plaintiff also insufficiently relies on her "information and belief" that Thompson and Arcilla were aware of Geiger's alleged comment. Compl., ¶ 27; see *Ross v. Pino*, No. 120-CV-01292-CMA-SKC, 2021 WL 4556016, at *5 (D. Colo. July 2, 2021) *report and recommendation adopted*, No. 20-CV-01292-CMA-SKC, 2021 WL 4398600 (D. Colo. Sept. 27, 2021)..

claim for relief. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."); *see also Ross*, No. 120-CV-01292-CMA-SKC, 2021 WL 4556016, at *5 (D. Colo. July 2, 2021) ("Plaintiffs' allegations based 'upon information and belief' are insufficient and speculative without additional factual allegations to support them."), *report and recommendation adopted*, No. 20-CV-01292-CMA-SKC, 2021 WL 4398600 (D. Colo. Sept. 27, 2021); *Inniss v. Rocky Mountain Inventory, Inc.,* 385 F. Supp. 3d 1165, 1168 (D. Colo. 2019).

Similarly, Plaintiff's allegations do not raise an inference of unlawful discrimination on the basis of sex-plus-race. To state a plausible Title VII claim based on sex-plus-race, Plaintiff must show "unfavorable treatment relative to an employee of the opposite sex who also shares the 'plus-' characteristic." *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1048 (10th Cir. 2020). Here, that would be a Black male employee. Plaintiff has not alleged that a similarly situated Black male employee was treated more favorably after requesting to return to contractor status; that a Black male employee was offered a higher hourly rate for contract work; or that ORPC treated such an employee better on account of his gender. On the contrary, Plaintiff's only allegations relating to a Black male colleague concern Thompson's purported statements in the fall of 2023 that "undermined [his] racial and sexual identities" as a gay Black man. Compl., ¶ 30.

In distinguishable circumstances, at least one court has found that a sex-plus-race based discrimination claim survived a Rule 12(b)(6) motion on the basis of an

employer's use of the phrase "angry Black woman." *See Robinson v. City of Atlanta*,
No. 110-CV-02036-WSD-AJB, 2010 WL 11440788 (N.D. Ga. Dec. 21, 2010), *report and
recommendation adopted*, No. 1:10-CV-2036-AT, 2011 WL 13096497 (N.D. Ga. Mar.
14, 2011). The court's reasoning in *Robinson* is not applicable to Plaintiff's sex-plus-
race discrimination claim, however, because that case involved the plaintiff's immediate
supervisor, and decisionmaker, referring to the plaintiff as an "angry [B]lack woman."
*Robinson*, 2010 WL 11440788, at *2. The court inferred that the supervisor had made
the decision to terminate the plaintiff's employment. *Id.* at *7. Here, Plaintiff does not
contend her supervisor used the alleged phrase. Likewise, she does not contend
Thompson or Arcilla, the decisionmakers, referred to her as an "angry Black woman."
Moreover, Plaintiff's assertion that Thompson and Arcilla knew that Geiger had referred
to her in such a way is based only on Plaintiff's information and belief, and is therefore,
impermissibly threadbare.

Because Plaintiff fails to state a claim to relief for sex discrimination or sex-plus-
race discrimination under Title VII that is "plausible on its face," her claims should be
dismissed. *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570).

**B.  The alleged discrimination was not severe or pervasive.**

"Although Title VII does not explicitly mention hostile work environment, a victim
of a [sexually or] racially hostile work environment may nevertheless bring a cause of
action under Title VII." *Young v. Colorado Dep't of Corr*., 94 F.4th 1242, 1249 (10th Cir.
2024) (citation omitted). To state a hostile work environment claim, Plaintiff must
plausibly allege that her workplace was "permeated with discriminatory intimidation,

8

ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her]

employment and create an abusive working environment." *Harris v. Forklift Systems,*

*Inc.,* 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted). To the

extent her claim relies on sex-based harassment, Plaintiff has failed to raise such a

claim above the speculative level. Geiger's isolated remarks that Plaintiff was an "angry

Black woman," without more, are insufficient to show a work environment permeated

with discriminatory intimidation, ridicule, and insult on the basis of Plaintiff's gender. *See*

*Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) (requiring a "steady barrage

of opprobrious" comments).

Plaintiff's sex-plus-race based hostile work environment claim fails for the same

reasons. In *Robinson*, the court dismissed the plaintiff's Title VII hostile work

environment claims based on race and sex despite the plaintiff's allegations that her

supervisor used the statement 'angry [B]black woman' on two occasions" and later

decided to terminate her employment *Robinson*, 2010 WL 11440788, at *5-7; *see also*

*Cuthbertson v. First Star Logistics, LLC*, 638 F. Supp. 3d 581, 592 (W.D.N.C.

2022) (finding no severe or pervasive sex or race discrimination when manager referred

to plaintiff as an "angry [B]lack woman" and employer took no action in response);

*Peeler v. Premier Ambulatory Surgical Ctr., LLC*, 2019 WL 13290394, at *31 (N.D. Ga.

Feb. 6, 2019), *report and recommendation adopted*, 2019 WL 13292758 (N.D. Ga. Mar.

29, 2019) (allegations insufficient to state race-based hostile work environment claim

where male managers referred to multiple female employees as "angry Black women").

Dismissal of Plaintiff's hostile work environment claims are appropriate under

Rule 12(b)(6) because Plaintiff has not adequately alleged severe or pervasive

harassment on the basis of sex or sex-plus-race sufficient to state a claim for relief.

**II.    Plaintiff's Fourteenth Amendment claims for discrimination and harassment on the basis of sex and sex-plus-race should be dismissed for failure to state a claim and because Thompson and Arcilla are entitled to qualified immunity.**

Plaintiff's fifth claim for relief asserts claims against defendants Thompson and

Arcilla under 42 U.S.C. § 1983 for violations of her Fourteenth Amendment equal

protection rights. Compl., ¶¶ 94-106. Specifically, she alleges Thompson and Arcilla

(1) discriminated against her on the basis of her sex or sex-plus-race when they

terminated her employment, attempted to underpay her, and took "other adverse

employment actions" and (2) harassed her by subjecting her to an environment with

severe or pervasive hostility on the basis of her sex or sex-plus-race. Plaintiff's claims

must be dismissed because her factual allegations are insufficient to state a plausible

claim for relief and because Thomspon and Arcilla are entitled to qualified immunity.

The Fourteenth Amendment's Equal Protection Clause prohibits employers from

using gender-based criteria in "hiring, firing, and promotional decisions," and from

"allowing work conditions to be permeated with hostile . . . sexual animus." *Young*, 94

F.4th at 1245. As in the Title VII context, "[t]he critical prima facie inquiry" in assessing

an equal protection discrimination claim "is whether the plaintiff has demonstrated that

the adverse employment action occurred under circumstances which give rise to an

inference of unlawful discrimination." *Barlow v. C.R. England, Inc.,* 703 F.3d 497, 505

(10th Cir. 2012) (citation omitted); *see also Eng. v. Colorado Dep't of Corr.*, 248 F.3d

1002, 1007 (10th Cir. 2001) (stating Title VII's analytical framework applies to

10

Fourteenth Amendment equal protection claims).

As discussed above, Plaintiff alleges Thompson and Arcilla, both women, terminated Plaintiff after she raised complaints of racism, not sexism. Plaintiff contends Thompson and Arcilla offered to pay Plaintiff a contractor rate that was less than a female contractor – not a male contractor. Compl., ¶ 39. Plaintiff also contends Thompson and Arcilla did not discipline Geiger for referring to Plaintiff as an "angry Black woman," relying solely on "information and belief" that Thompson and Arcilla were aware of the alleged comments. *Id.,* ¶ 27. Thus, Plaintiff has not adequately pled a basis to infer that Thompson and Arcilla were aware that Geiger had used that phrase and failed to discipline her. *See* Section I.A.

These sparse allegations do not raise an inference that Thompson and Arcilla used gender-based criteria when taking employment actions concerning Plaintiff or that they created a workplace that was objectively hostile to women. *See Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1222 (10th Cir. 2015) (noting "it is not enough that a particular plaintiff deems the work environment hostile; it must also be of the character that it would be deemed hostile by a reasonable employee under the same or similar circumstances").

The same is true for Plaintiff's equal protection claim based on sex-plus-race. Plaintiff's allegations that a non-supervisory colleague referred to her as an "angry Black woman" is insufficient for the Court to infer that Thompson or Arcilla's challenged employment actions were motivated by Plaintiff's sex-plus-race or that Thompson and Arcilla allowed her work conditions to be permeated with hostile animus on that basis.

11

Without pleading an inference of unlawful discrimination, Plaintiff cannot state a

plausible claim for sex- or sex-plus-race based discrimination or harassment under the

Fourteenth Amendment.

In addition, Defendants Thompson and Arcilla are entitled to qualified immunity

because Plaintiff's allegations are insufficient to plead any of the requirements of an

equal protection claim. *See Pearson*, 555 U.S. at 232-33 (upon assertion of qualified

immunity defense, plaintiff must demonstrate in part that the specific actions of each

defendant violated a specific statutory or constitutional right). Even if the allegations

demonstrated a sex-based discrimination or harassment violation, it was not clearly

established at the relevant time that Defendants could be held liable based on such

limited or lack of allegations pertaining to sex-based or sex-plus-race based

discrimination or harassment. *See* Section I.

### III.    Plaintiff has not alleged a plausible claim of discrimination or harassment against ORPC on the basis of sex or sex-plus-race under CADA.

Under CADA, it is unlawful "[f]or an employer to refuse to hire, to discharge, to

promote or demote, to harass during the course of employment, or to discriminate in

matters of compensation, terms, conditions, or privileges of employment against any

individual otherwise qualified because of . . . sex." Colo. Rev. Stat. § 24-34-402(1)(a)(I)

(2023). Plaintiff has failed to allege sufficient factual matter that, taken as true, state a

plausible sex or sex-plus-race discrimination or harassment claim under CADA.

### A.  Plaintiff's discrimination claims are conclusory.

Like Title VII, CADA prohibits employment discrimination and requires courts to

determine "whether . . . intentional discrimination may be inferred." *Colorado C.R. Comm'n v. Big O Tires, Inc.,* 940 P.2d 397, 399 (Colo. 1997). To state a prima facie case of discrimination, Plaintiff must establish, inter alia, "that all the evidence in the record supports or permits an inference of unlawful discrimination." *Bodaghi v. Dep't of Nat. Res.*, 995 P.2d 288, 297 (Colo. 2000). Colorado courts rely on cases interpreting Title VII because CADA "closely parallels . . . Title VII of the Civil Rights Act." *Big O Tires,* 940 P.2d at 399.[2]

Plaintiff alleges Defendants violated CADA by treating her less favorably than similarly situated male employees when ORPC offered her less compensation as a part-time contractor and when it terminated her employment. Compl., ¶¶ 121-135. Her factual allegations are inadequate to state a claim for relief. Plaintiff does not identify any male employees who were permitted to move to part-time contractor status under similar conditions. Likewise, she does not allege Defendants offered any male employees a higher part-time hourly rate for contract work. Other than Geiger's use of the phrase "angry Black woman," Plaintiff provides no evidence that Defendants discriminated against her on the basis of her sex or sex-plus-race. As explained above, Geiger's remarks do not plausibly support an inference of unlawful discrimination. *See* Section I.A. Plaintiff's CADA discrimination claims on the basis of sex and sex-plus-race should be dismissed.

**B. Plaintiff's harassment claims are unsupported by sufficient factual allegations.**

---

[2] Following 2023 amendments to CADA, Title VII's severe and pervasive standard is no longer applicable to harassment claims under CADA. *See* Colo. Rev. Stat. § 24-34-400.2 (POWR Act Legislative Declaration).

CADA also prohibits employers from harassing employees because of sex or race. Colo. Rev. Stat. § 24-34-402(1)(a)(I). As relevant here, "harassment" is defined as "the act of engaging in, any unwelcome physical or verbal conduct" directed at an individual because of that person's membership in a protected class, if the "conduct or communication is subjectively offensive to the individual alleging harassment and is objectively offensive to a reasonable individual who is a member of the same protected class." *Id.* § 24-34-402(1.3)(a). Under CADA, "[t]he conduct or communication need not be severe or pervasive to constitute a discriminatory or an unfair employment practice." *Id.* Conduct or communication can violate CADA's anti-harassment provisions if (1) submission to such conduct or communication is "explicitly or implicitly made a term or condition of the individual's employment"; (2) "[s]ubmission to, objection to, or rejection of the conduct or communication is used as a basis for employment decision"; or (3) it has "the purpose or effect of unreasonably interfering with the individual's work performance or creating an intimidating, hostile, or offensive working environment." *Id.* "[P]etty slights, minor annoyances, and lack of good manners do not constitute harassment unless the slights, annoyances, or lack of manners, when taken individually or in combination and under the totality of the circumstances" meet CADA's standards for unlawful harassment.[3] *Id.* § 24-34-402(1.3)(c)(I).

_____

[3] The factors relevant to the totality-of-the-circumstances inquiry include the following about the alleged offending conduct or communication: frequency; number of individuals involved; type or nature; duration; location; threatening nature; any power differential between the harasser and harassed; whether it was humiliating or degrading; and whether it reflects stereotypes of a protected class. *Id.* § 24-34-402(1.3)(c)(II).

Even under CADA's more lenient standard, Plaintiff's factual allegations are inadequate to establish a plausible claim for harassment on the basis of sex or sex-plus-race. Although Geiger's alleged reference to Plaintiff as an "angry Black woman" may provide some circumstantial evidence of sexual and racial animus by Geiger, her statements do not rise to the level of harassment under CADA because submission to the statements was not a term or condition of Plaintiff's employment; Plaintiff has inadequately pled that Thompson and Arcilla were aware of the statements when making employment decisions such that "[s]ubmission to, objection to, or rejection of the conduct or communication [was] used as a basis for employment decision"; and the statements did not interfere with Plaintiff's work or create a hostile work environment on the basis of sex or sex-plus-race. *Id.* § 24-34-402(1.3)(a). Because Plaintiff's factual allegations rely on one colleague's statements and because Plaintiff has not adequately alleged that Thompson or Arcilla were aware of the statements, Plaintiff has not "nudged [her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Consequently, her CADA harassment claims on the basis of sex and sex-plus-race should be dismissed.

## IV.  Plaintiff's CADA claims against Defendants Thompson and Arcilla fail as a matter of law.

Plaintiff's Seventh and Eighth claims for relief also assert claims of "aiding and abetting" against Defendants Thompson and Arcilla in alleged violation of CADA. *See* Compl., ¶¶ 124-146. These claims must be dismissed.

### A.  Because aiding and abetting requires the concerted actions of more than one actor, Plaintiff's claims must be dismissed.

15

Pursuant to CADA, it is a discriminatory or unfair employment practice "[t]o aid, abet, incite, compel, or coerce the doing of any act defined in this section to be a discriminatory or unfair employment practice." Colo. Rev. Stat. § 24-34-402(1)(e)(I). The statute does not define "aid" or "abet." *Id.*, *passim.* "When a term goes undefined in a statute, [courts] give the term its ordinary meaning." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012). Often, courts begin with dictionary definitions when discerning the ordinary meaning of an undefined term. *Rocky Mountain Wild v. Dallas,* 98 F.4th 1263, 1291 (10th Cir. 2024) ("Dictionary definitions are useful touchstones to determine the 'ordinary meaning' of an undefined statutory term.*")* (Internal citations omitted) According to Black's Law Dictionary, an "aider" is "[s]omeone who aids *another."* *Aider,* BLACK'S LAW DICTIONARY (12th ed. 2024) (emphasis added). And an "abettor" is "[s]omeone who instigates the commission of a crime or advises and encourages *others* to commit it." *Abettor*, Black's Law Dictionary (12th ed. 2024) (emphasis added). Both definitions contemplate the existence of two or more actors. Black's Law Dictionary defines "aid and abet" to mean "assist[ing] or facilitat[ing] the commission of a crime or tort, or to promote its accomplishment."  *Aid and Abet*, BLACK'S LAW DICTIONARY (12th ed. 2024) (emphasis added). The definition of "aid and abet" includes a statement that the tort of aiding and abetting can be provide by showing that "a tort was committed against the plaintiff *by someone else.*" *Id.* (emphasis added).

The ordinary meanings of aid, abet, and "aid and abet" contemplate multiple actors committing independent actions. Thus, under the commonly accepted meaning of the terms, a person cannot assist, facilitate, compel, or coerce their own actions.

CADA's aiding and abetting prohibition provides "that persons who assist such discrimination commit independent discriminatory acts." *Colorado C.R. Comm'n v. Travelers Ins. Co.*, 759 P.2d 1358, 1370 (Colo. 1988). By doing so, CADA "seeks to eliminate all practices leading to and facilitating discriminatory [practices]" in addition to the practices themselves. *Id.*

At least one federal court in Colorado considering whether CADA's aiding and abetting provision requires separate actors, has determined that it does. *See Judson v. Walgreens Co.,* No. 20-CV-00159-CMA-STV, 2021 WL 1207445, at \*4 (D. Colo. Mar. 31, 2021) (explaining why two or more actors are necessary for aiding and abetting liability under the CADA). In *Judson,* the plaintiff sued her former employer for discrimination, harassment, and retaliation under CADA and two of its employees under the CADA's aiding and abetting provision. *Id.*, at \*1-2. Like Plaintiff, Judson alleged that the two individual defendants acted only within the course and scope of their employment. *Id.* at \*4. The defendants moved to dismiss, arguing that aiding and abetting required two or more actors, and an employer cannot aid and abet itself. *Id.,* at \*4. Judge Arguello applied the intra-corporate conspiracy doctrine and dismissed the aiding and abetting claims. *Id.,* at \* 4-5. The court held that the plaintiff's allegations against the three defendants "are not distinct legal actors capable of aiding and abetting one another; instead, for the purposes of liability, they are the same entity." *Id.* at \*5; s*ee also, Hyland v. American Truck Business Services, LLC*, No. 2020-CV-30566, 2021 WL 6882753 (Colo.Dist.Ct. Oct. 11, 2021) (dismissing an aiding and abetting charge because the plaintiff's allegations against the employee defendants "were one and the

same as her allegations against the corporate defendant itself.").

While one federal case in Colorado and at least one case in Colorado state courts came to a different conclusion, the court should follow the reasoning in *Judson*. *See Morales v. Law Firm of Michael W. McDivitt, P.C., Morales v. L. Firm of Michael W. McDivitt, P.C.,* 641 F. Supp. 3d 1035 (D. Colo. 2022) and *Romero v. Bimbo Bakeries USA, Inc.*, No. 23CV32290, 2023 WL 11897565, at *3 (Colo.Dist.Ct. Dec. 05, 2023) (following *Morales*). In *Morales*, the court determined because "[t]he aiding and abetting provision draws a clear distinction between an employer and its employees ... [it] cannot be reasonably interpreted to consider employer and employee as a single entity." *Id.* at 1042. However, this conclusion directly contradicts the long line of cases holding that employers and their in-scope employees are, legally speaking, a single actor. *See e.g., Judson,* 2021 WL 1207445, at *4-5 (discussing interagency conspiracy doctrine).

Thus, construing the statute consistent with basic agency principles and the intra-corporate conspiracy doctrine, it is clear that "employees" refers only to employees acting outside the scope of their employment. Like the plaintiff in *Judson,* Plaintiff does not allege that Defendants Thompson or Arcilla acted outside the scope of their employment. Rather, she alleges that they acted *within* the scope of their employment such that ORPC is vicariously liable for their actions. *See* Compl., ¶ 12 (alleging Defendant Thompson "was acting within the scope of her official duties and employment as the Executive Director of the ORPC at all times …..") and ¶ 13 (alleging Defendant Arcilla "was acting within the scope of her official duties and employment as the Deputy Director of the ORPC at all times...."). Thus, Plaintiff's aiding and abetting claim is not

viable here because Defendants ORPC, Thompson, and Arcilla were a single actor. And a single actor cannot aid and abet its own alleged discriminatory or retaliatory acts. Underscoring the nature of Plaintiff's claims as against one actor, is the fact that Plaintiff relies on the same set of alleged actions for both her CADA discrimination and retaliation claims against ORPC and her CADA aiding and abetting claims against Defendants Thompson and Arcilla. *See* Complaint, *passim*.

### B. Aiding and abetting requires distinction from the underlying claim of discrimination.

CADA's aiding and abetting provision requires a distinction between the allegations underlying the charge of discrimination and those allegations underlying the aiding and abetting claim. In *Mondragon v. Adams Cnty. Sch. Dist. No. 14*, Judge Babcock noted that "CADA's prohibition against aiding and abetting discriminatory acts .. . . prohibits conduct that assists others in their performance of prohibited acts." No. 116-CV-01745-LTB-KMT, 2017 WL 733317, at *13 (D. Colo. Feb. 24, 2017) (internal quotation marks omitted) (quoting *Travelers*, 759 P.2d at 1369)). In *Judson v. Walgreens Co.*, Judge Arguello dismissed a CADA aiding and abetting claim against an individual noting it was "based on the same conduct" underlying Plaintiff's CADA discrimination claims. No. 20-CV-00159-CMA-STV, 2021 WL 1207445, at *4 (D. Colo. Mar. 31, 2021). In *Hyland v. American Truck Business Services et al.*, a Colorado District Court judge dismissed an aiding and abetting charge because the plaintiff's allegations against the employee defendants "were one and the same as her allegations against the corporate defendant itself." No. 2020-CV-30566, 2021 WL 6882753 (Colo.Dist.Ct. Oct. 11, 2021). Here, Plaintiff's allegations against ORPC for alleged

discrimination and retaliation are the same allegations in support of her claims against Thompson and Arcilla for aiding and abetting. Accordingly, Plaintiff's claims must be dismissed.

## CONCLUSION

For the reasons stated herein, Defendant respectfully requests the Court dismiss Plaintiff's claims pursuant to Title VII, the Fourteenth Amendment, and CADA, in part, and to the extent those claims rely on sex-based or sex-plus-race based discrimination or harassment. Defendant also asks the Court to dismiss Plaintiff's CADA claims against Thompson and Arcilla, for aiding and abetting.

Respectfully submitted this 29th day of August 2025.

PHILIP J. WEISER
Attorney General

*/s/ Juliane DeMarco*

GRACE CHISHOLM
Assistant Attorney General
JULIANE DEMARCO
Senior Assistant Attorney General
Colorado Attorney General's Office
1300 Broadway
Denver, Colorado 80203
(720) 508-6613 (GC);(720) 508-6563 (JD)
Grace.Chisholm@coag.gov
Juliane.DeMarco@coag.gov
*Counsel of Record

*Attorneys for Defendants ORPC, Thompson, and Arcilla*

<u>CERTIFICATE OF SERVICE</u>

I certify that, on August 29, 2025, a true and accurate copy of the foregoing

**MOTION TO PARTIALLY DISMISS PLAINTIFF'S COMPLAINT** electronically filed with

the Clerk for the Court using the CM/ECF system, which will send notification of such filing

to the following:


**Mari Newman**
**Andy McNulty**
**Madeline Marie Leibin**
Newman McNulty LLC
1490 N. Lafayette Street, Suite 304
Denver, CO 80218
Telephone: 720-850-5770
Mari@Newman-McNulty.com
Andy@Newman-McNulty.com
Madeline@Newman-McNulty.com
*Attorneys for Plaintiff*


*/s/ Erika Y. Reed Bermudez*
Erika Y. Reed Bermudez, Senior Paralegal